IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| BRIGHTHOUSE LIFE INSURANCE COMPANY<br>CHARLOTTE, NC 28277<br><br>   Plaintiff<br><br>v.<br><br>THERESE M. HALL<br>4525 POST RD S.E.<br>JEWETT, OHIO 43986<br><br>and<br><br>MARILYN HALL<br>4525 POST RD S.E.<br>JEWETT, OHIO 43986<br><br>   Defendants | CASE NO.<br><br>JUDGE<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT** |

Brighthouse Life Insurance Company ("Brighthouse"), by and through its undersigned counsel, states for its Complaint for Declaratory Judgment as follows:

**PARTIES**

1. Brighthouse is an insurance company organized and existing under the laws of the state of Delaware, with its principal place of business in Charlotte, North Carolina. Brighthouse is authorized to do business in the state of Ohio.

2. MetLife Investors USA Insurance Company ("MetLife") is now known as Brighthouse, and MetLife issued life insurance policy number 212 164 744 US (the "Brighthouse Policy") that is the subject of this declaratory judgment action.

{M0375736.1}

3. Darrell Coram ("Mr. Coram") was the owner and insured of the Brighthouse Policy.

4. Upon information and belief, Therese Hall is an individual residing at 4525 Post Road SE, Jewett, Harrison County, Ohio who claims an interest in the Brighthouse Policy.

5. Upon information and belief, Marilyn Hall is an individual residing at 4525 Post Road SE, Jewett, Harrison County, Ohio who may have an interest in the Brighthouse Policy.

## STATEMENT IN SUPPORT OF JURISDICTION

6. Jurisdiction is proper in the United States District Court pursuant to 28 U.S.C. 2201, 28 U.S.C. §1332, and Fed. R. Civ. P. 57 in that it seeks a determination and declaration of the rights of citizens of different states and involves an actual claim or controversy in excess of $75,000, exclusive of interest and costs.

**7.** Venue is proper in the United States District Court for the Southern District of Ohio, Eastern Division, pursuant to Rule 82.1 of the Rules of the Southern District of Ohio because, upon information and belief, Defendants Marilyn Hall and Therese Hall reside in Harrison County, Ohio.

## FACTUAL BACKGROUND

8. Mr. Coram applied for the Brighthouse Policy on or about June 4, 2012. This application was completed via telephone and was a voice-signed application.

9. In the application, it was represented that Mr. Coram worked for "Darrells Restoration" as a drywaller and roofer, and had an annual income of $42,000. It was further denied in the application that Mr. Coram was ever diagnosed with mental retardation or any emotional or psychological disorder.

10. Based on the representations made in the application, the Brighthouse Policy on the life of Mr. Coram was issued in the amount of Five-Hundred Thousand and 00/100 Dollars ($500,000.00). This Brighthouse Policy is identified in Brighthouse's records as Policy Number 212 164 744 US. Mr. Coram was both the owner and the insured of the Brighthouse Policy. A true and accurate copy of the Brighthouse Policy is attached hereto as Exhibit A.

11. In his application, Mr. Coram purportedly initially designated Defendant Marilyn Hall and Defendant Therese Hall as equal fifty percent (50%) co-beneficiaries of the Brighthouse Policy. A properly redacted but otherwise true and accurate copy of the Application for Life Insurance is attached hereto as Exhibit B.

12. On or about September 6, 2012, Brighthouse received a Life Insurance Change of Beneficiary form requesting that the Brighthouse Policy beneficiary be changed to Therese Hall as the sole primary beneficiary, with no contingent beneficiary listed. The Change of Beneficiary form was signed by Mr. Coram and witnessed by an Anthony Fernwalt. A properly redacted but otherwise true and accurate copy of the change of beneficiary is attached hereto as Exhibit C.

13. The Brighthouse Policy premiums were paid by electronic fund transfers from a PNC Bank checking account in Mr. Coram's name.

14. In May of 2015, after drafts from Mr. Coram's bank accounts were rejected, Therese Hall called MetLife to correct issues with the premium payments made from Mr. Coram's bank account. Therese Hall sorted out this issue with the bank account, and premium payments were again paid by electronic fund transfers from the PNC Bank checking account in Mr. Coram's name.

15. In May of 2015, Therese Hall also advised MetLife that she was not Mr. Coram's spouse (as was indicated on the initial beneficiary designation), but was instead Mr. Coram's close friend.

16. On or about October 4, 2016, Mr. Coram died.

17. On November 29, 2016, Brighthouse received a letter from Attorney Douglas Bond, representing Therese Hall, inquiring about information needed to file a claim on the Brighthouse Policy. Mr. Bond also provided a copy of Mr. Coram's unofficial death certificate. .

18. MetLife subsequently obtained a certified death certificate. The death certificate indicated that the cause of Mr. Coram's death was a gunshot wound to the back of the head. A properly redacted but otherwise true and accurate copy of Mr. Coram's death certificate is attached hereto as Exhibit D.

19. On March 9, 2017, Brighthouse received a Life Insurance Claim Form executed by Therese Hall (or her power of attorney, Douglas Bond) in which she made a claim for the benefits under the Brighthouse Policy. A properly redacted but otherwise true and accurate copy of the Life Insurance Claim Form is attached hereto as Exhibit E.

20. Upon receiving the claim and learning of Mr. Coram's cause of death, Brighthouse initiated an investigation of Mr. Coram's application for life insurance, his death, and those persons associated with his application for the Brighthouse Policy. Brighthouse also requested confirmation from law enforcement authorities that Therese Hall was not a suspect in the death of Mr. Coram, and was not in any way involved in his death. As a result of this investigation, Brighthouse became aware of the following facts.

21. Upon information and belief, Mr. Coram had a learning disability, attended special education classes until the age of 21, and could not read or write above an alleged fourth-grade level. His family members considered him incompetent to handle his affairs on his own.

22. In 2009, when Mr. Coram was 32 years old, he underwent a comprehensive mental and social skills evaluation and testing by an independent psychologist at the request of the Bureau of Disability Determination. The evaluating expert found that Mr. Coram suffered from major depressive disorder, had cognitive limitations that placed him in the mild mentally retarded range, and would have difficulty participating in decisions affecting his future, conducting his own living arrangements, and managing his funds. Mr. Coram's Wechsler Adult Intelligence Scale IV ("WAIS-IV") testing showed an overall extremely low IQ of 68, placing him in the mildly mentally retarded range, and a "Global Assessment Functioning" ("GAF") score of 50, indicative of serious impairment in social and occupational functioning. Based on the test results and evaluation, Mr. Coram was awarded Social Security Disability Benefits, but the evaluator further expressed that Mr. Coram would be unable to manage his benefits.

23. Based on the information obtained by Brighthouse in the course of its investigation, Mr. Coram was largely unable to hold a steady job and did not work as a drywall and roofing contractor as represented in his application for life insurance. Furthermore, based on the information obtained, Mr. Coram did not earn $42,000 per year as was also represented in his life insurance application.

24. The representations made in Mr. Coram's application for the Brighthouse Policy were willfully false and material to the risk.

25. But for the representations, MetLife would not have issued the Brighthouse Policy and/or would not have issued the Brighthouse Policy in the amount applied for.

26. Upon information and belief, Mr. Coram also did not have a spouse and did not have any dependents.

27. Upon information and belief, Mr. Coram lived on what local residents call a "compound" in rural Ohio.

28. Upon information and belief, Therese Hall, Marilyn Hall, the Hall family, and Anthony Fernwalt frequently visited and/or lived at the compound.

29. Upon information and belief, Therese Hall was and currently is the "significant other" of Anthony Fernwalt.

30. Upon information and belief, Anthony Fernwalt was and currently is considered a "religious leader" at the compound, and carries influence over people in that community.

31. Upon information and belief, and as admitted by Therese Hall in her interview with a Brighthouse investigator, Anthony Fernwalt's voice can be heard in the background of Mr. Coram's telephone application when Mr. Coram verbally designated Therese Hall and Marilyn Hall as co-beneficiaries.

32. Anthony Fernwalt witnessed Mr. Coram's Life Insurance Change of Beneficiary form requesting that the beneficiary be changed to Therese Hall as the sole primary beneficiary, with no contingent beneficiary listed.

33. Upon information and belief, several other persons at the "compound" or in the local area have died under suspicious circumstances in which Anthony Fernwalt has either directly (as beneficiary) or indirectly benefited from their life insurance policies.

34. Upon information and belief, Mr. Coram was the owner and insured of as many as four life insurance policies, despite having no spouse, no dependents, and limited income. The

{M0375736.1} 6

other three policies were taken out within two years of Mr. Coram's death, and one of the policies was allegedly procured only several weeks before his death.

35. Upon information and belief, at approximately 3:18 AM on October 4, 2016, Carrollton Police Department officers were dispatched to an apartment located at Carroll Square Apartments in Carrollton, Ohio after Marilyn Hall called and asked for a wellbeing check on Timothy Hall.

36. Upon information and belief, officers arrived at the above-described scene and found Timothy Hall (Therese Hall's stepfather) and Mr. Coram deceased with fatal gunshot wounds.

37. The cause and circumstances surrounding the death of Mr. Coram, including the involvement of Anthony Fernwalt and Theresa Hall, is currently under investigation by law enforcement authorities.

38. As part of its investigation, Brighthouse sought confirmation from law enforcement authorities that Therese Hall was not a suspect in the death of Darrell Coram, but Brighthouse has been unable to obtain confirmation from law enforcement authorities that Therese Hall was not involved in the death of Darrell Coram.

39. Therese Hall and Marilyn Hall were in no way financially dependent on Darrell Coram and had no insurable interest in his life.

### COUNT I – DECLARATORY JUDGMENT
### (To Declare the Brighthouse Policy Void *Ab Initio*)

40. Brighthouse incorporates all of the foregoing allegations as if fully restated herein.

41. Mr. Coram was not competent to procure the Brighthouse Policy or pay the premiums for same.

42. Therese Hall and/or her significant other, Anthony Fernwalt, conspired to procure the Brighthouse Policy on Mr. Coram with the intent to benefit financially from his death.

43. Therese Hall and/or Anthony Fernwalt were instrumental in obtaining the Brighthouse Policy but lacked an insurable interest in the life of Mr. Coram.

44. Therese Hall and/or Anthony Fernwalt procured the issuance of the Brighthouse Policy by fraudulent means and/or through the exercise of undue influence on Darrell Coram, an incompetent person.

45. For any of the reasons set forth above, the Brighthouse Policy is void *ab initio*, and Brighthouse is entitled to a declaratory judgment from this Court determining and declaring that the Brighthouse Policy is void *ab initio*.

46. For the reasons set forth above, payment of benefits under the Brighthouse Policy is against public policy.

47. For the reasons set forth above, Brighthouse is entitled to a judgment determining and declaring that no benefits are payable to defendants or anyone else under the Brighthouse Policy.

## COUNT II – DECLARATORY JUDGMENT
**(To Declare to Whom the Benefits Are Payable)**

48. Brighthouse incorporates all of the foregoing allegations as if fully restated herein.

49. Therese Hall has submitted a claim for benefits under the Brighthouse Policy.

50. Brighthouse has not been able to obtain confirmation from law enforcement authorities that Therese Hall is not a suspect in the death of Mr. Coram.

51. Brighthouse cannot legally pay the Brighthouse Policy benefits to Therese Hall if she is or becomes ineligible to receive the benefits under Ohio Revised Code § 2105.19.

52. There are also questions of fact concerning whether Mr. Coram was legally competent to name Therese Hall his sole beneficiary when he changed his beneficiary to Therese Hall and/or whether Theresa Hall became Mr. Coram's sole beneficiary under the Brighthouse Policy through the exercise of undue influence over Mr. Coram.

53. In the event that Mr. Coram was not legally competent to name Therese Hall as his sole beneficiary or that Theresa Hall became Mr. Coram's sole beneficiary under the Brighthouse Policy through the exercise of undue influence, there are questions of fact concerning whether the benefits would be payable to Marilyn Hall and Therese Hall as co-equal beneficiaries pursuant to Mr. Coram's initial beneficiary designation. Specifically, there are questions concerning whether Mr. Coram was legally competent to name Marilyn Hall and Therese Hall as co-beneficiaries at the time of the Brighthouse Policy application, whether Defendants Marilyn Hall and Therese Hall were named co-beneficiaries through undue influence over Mr. Coram, whether Mr. Coram was legally competent to complete the application himself, and whether Mr. Coram actually completed the application himself.

54. Mr. Coram did not name a contingent beneficiary.

55. If this Court declines to enter a declaratory judgment voiding the Brighthouse Policy *ab initio*, Brighthouse states that there are questions of fact and law regarding to whom the benefits are payable which the Court must decide.

56. In the event that the benefits are not payable to Therese Hall pursuant to the change of beneficiary allegedly made by Mr. Coram in 2012, and are not payable to Defendants Marilyn Hall and Therese Hall as co-beneficiaries under the designation allegedly made by Mr. Coram at the time of the Brighthouse Policy application, then the benefits would be payable to the Estate of Darrell Coram.

{M0375736.1}                                                                 9

57. As of the time of the filing of this Complaint, no estate has been opened for Darrell Coram.

58. Because of the foregoing, Brighthouse cannot determine the proper beneficiary of the Brighthouse Policy, meaning that a true controversy exists as to whom the benefits are payable if benefits are, in fact, payable.

59. Based on the foregoing allegations, if the Court does not determine and declare that the Brighthouse Policy is void *ab initio* and that no benefits under the Brighthouse Policy are payable, then Brighthouse requests this Court to determine and declare to whom the benefits of the Brighthouse Policy are payable.

**WHEREFORE**, and based on the foregoing allegations, Brighthouse prays for relief as follows:

(1) As to Count One, that this Court enter a declaratory judgment voiding the Brighthouse Policy *ab initio*;

(2) Alternatively, under Count Two, that this Court enter a declaratory judgment declaring to whom the benefits of the Brighthouse Policy are payable as a result of the death of Mr. Coram; and

(3) An award of its attorneys' fees and costs, and any other costs this Court deems just and equitable.

Respectfully submitted,

s/C. Scott Lanz
C. Scott Lanz, Esq.　　　(#0011013)
Adam V. Buente, Esq.　　(#0092657)
Manchester, Newman & Bennett
The Commerce Building
201 E. Commerce St, Level Two
Youngstown, OH 44503-1641
Telephone:(330) 743-1171
Facsimile: (330) 743-1190
Email:　　slanz@mnblawyers.com
　　　　　abuente@mnblawyers.com

*Attorneys for Plaintiff*

## JURY DEMAND

Plaintiff demands a trial by jury for all issues so triable.

s/C. Scott Lanz
C. Scott Lanz, Esq.　　　(#0011013)